**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5385-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HARRY WILKINS, a/k/a
NALANI WILKINS,

    Defendant-Appellant.

_____

Submitted September 30, 2020 – Decided November 13, 2020

Before Judges Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 17-03-0111.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Paul H. Heinzel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant of second-degree robbery, N.J.S.A. 2C:15-1(a)(1), and defendant was sentenced to five years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. On appeal, defendant challenges the conviction and sentence, arguing that the trial court erred in (1) not precluding hearsay testimony; (2) giving improper instructions on flight as consciousness of guilt; and (3) not instructing the jury on a lesser-included offense as an accomplice. Defendant also argues that (4) the prosecutor engaged in misconduct in closing arguments and (5) her sentence was improper.[1] Having reviewed the record and applicable law, we reject these arguments and affirm.

I.

Defendant's conviction arose out of an altercation with a cab driver. On November 5, 2016, defendant and co-defendant, Carlos "Royal" Martinez, were staying at a hotel in New Jersey and arranged for a taxi to take them to the Bronx in New York City. Defendant and Martinez identify as transgender. Their counsel argued that the cab driver disparaged them because of this and their ethnicities. By contrast, the cab driver testified that he requested payment up front, defendant and Martinez refused, and they assaulted him with pepper spray, threatened him with scissors, and robbed him.

---

[1] We use feminine pronouns out of respect for defendant's wishes and identity.

We take the facts from the trial, at which the jury heard testimony from the cab driver, a hotel clerk, and several police officers. Defendant and Martinez elected not to testify.

The cab driver testified that on November 5, 2016, he was dispatched to pick up customers from a hotel and take them to the Bronx. When he arrived at the hotel, he met the two customers. He described one of the customers as wearing a pink jacket and the other as wearing a gray sweater with a hood. Once the customers were in the cab, he told them that the fare would be $160 plus tolls and he requested payment upfront. An argument ensued and the customer wearing the pink jacket pepper sprayed him. The customer in pink then ordered him to give them money, pulled out scissors, and threatened to kill him. According to the driver, the customer wearing pink sprayed him at the instruction of the customer in gray. The customers then took money from him, smashed his cell phone, and fled.

The hotel clerk testified that sometime around 10 p.m. on November 5, 2016, two guests requested he call them a cab. He let them use the hotel's phone to make the arrangements. Approximately fifteen to twenty minutes later, the cab driver arrived, and the clerk saw the guests get into the taxi. Shortly thereafter, the clerk heard someone scream for help and went outside. He saw

the driver, who yelled that he could not see. As the clerk assisted, the driver told him the customers had sprayed his eyes and robbed him. Another person in the vicinity then asked what happened and, according to the clerk, the driver stated, "somebody robbed me," and "they sprayed my eyes."

Following a call to 911, the police responded. Police Officer Leonard Bird was the first officer to arrive at the hotel. The driver told Bird that two "gay" customers had requested a ride to the Bronx, he had requested pre-payment, and an argument ensued. The driver reported that one of the customers pepper sprayed him, he was threatened with a pair of scissors, he gave them money, and the customers fled.

Other police officers located defendant and Martinez at the Fairfield Inn. Two of those officers subsequently described defendant as wearing a gray shirt and Martinez as wearing a pink shirt. The cab driver was brought to the Inn and he identified defendant and Martinez as the individuals who had pepper sprayed and robbed him. That identification was recorded on a police vehicle's mobile video recorder. During the identification, the cab driver stated that the person wearing gray had pepper sprayed him at the instruction of the person wearing pink.

A-5385-17T4

Defendant and Martinez were arrested. The police found a pair of scissors and a container of mace on Martinez. Defendant was searched and police found two keys for rooms at the hotel where the cab driver had picked up the customers. The police also found $155 in cash in defendant's property.

After hearing the evidence at trial, the jury found defendant guilty of robbery. Defendant now appeals.

## II.

On appeal, defendant challenges both her conviction and sentence and makes five arguments, which she articulates as follows:

> POINT I – THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING THE STATE WITNESSES TO TESTIFY THAT THE CAB DRIVER TOLD THEM HE HAD BEEN ROBBED, WHICH WAS INADMISSIBLE HEARSAY AND IMPROPERLY BOLSTERED THE CREDIBILITY OF THE ALLEGED VICTIM.
>
> POINT II – THE PROSECUTOR'S COMMENTS DURING HIS CLOSING ACCUSING DEFENSE COUNSEL OF MAKING HOMOPHOBIC AND RACIAL SLURS DEPRIVED DEFENDANT OF A FAIR TRIAL, AND THE COURT'S GENERAL INSTRUCTION NOT TO CONSIDER POWERPOINT PRESENTATIONS AS EVIDENCE WITHOUT ADDRESSING THE STATE'S OFFENSIVE REMARKS WAS WHOLLY INADEQUATE.
>
> POINT III – THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ISSUING AN

UNCONSTITUTIONAL INSTRUCTION ON FLIGHT AS CONSCIOUSNESS OF GUILT.

POINT IV – THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT DEFENDANT COULD BE FOUND GUILTY OF A LESSER OFFENSE AS AN ACCOMPLICE DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.

POINT V – THIS COURT SHOULD REMAND FOR RESENTENCING BECAUSE: THE TRIAL COURT ERRED IN DENYING DRUG COURT; IMPOSED AN EXCESSIVELY DISPARATE SENTENCE WITH RESPECT TO THE CO-DEFENDANT; IMPROPERLY FOUND AND WEIGHED AGGRAVATING AND MITIGATING FACTORS; AND FAILED TO CONSIDER THE DEFENDANT'S YOUTH.

A. The Hearsay Testimony Regarding What the Cab Driver Told Others

Defendant contends that the trial court committed reversible error by allowing several witnesses to testify about what the cab driver told them concerning the incident. In that regard, defendant argues that the testimony was inadmissible hearsay and that it improperly bolstered the driver's credibility.

Defendant acknowledges that no objection to the hearsay was made at trial but argues that the admission of the testimony was plain error. In particular, defendant objects to the hearsay testimony provided by two police officers.

A-5385-17T4

The State maintains that defense counsel strategically did not object to the testimony because it revealed inconsistent statements by the cab driver concerning which of the customers assaulted him. The State also argues that defense counsel thereafter cross-examined the witnesses using the hearsay statements to highlight their theme of inconsistency by the cab driver.

Because no objection was made at trial, we review the admission of the testimony for plain error. R. 2:10-2; see also State v. Scharf, 225 N.J. 547, 576-78 (2016). The trial record establishes that defense counsel used the inconsistencies in what the cab driver reported to others as a means of attacking his credibility. Accordingly, defendant's argument on appeal is also barred by the doctrine of invited error. State v. A.R., 213 N.J. 542, 561 (2013). "Under that settled principle of law, trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.'" Ibid. (quoting State v. Corsaro, 107 N.J. 339, 345 (1987)).

Moreover, at trial defense counsel agreed that the cab driver's statements to the hotel clerk were admissible as excited utterances and under the present-sense impression exception to the hearsay rule. Thereafter, defense counsel did not object when the State offered testimony from Officer Bird concerning what

A-5385-17T4

the cab driver reported to him. Both defendant and Martinez's counsel then used those same hearsay statements in cross-examining Officer Bird.

Defense counsel also cross-examined another officer, Detective Derek Miller, concerning the cab driver's statements. Indeed, defense counsel agreed to allow the recorded interview of the cab driver conducted by Miller to be played to the jury.

In short, we discern no plain error. Consequently, we reject defendant's arguments that the admission of hearsay constituted reversible error.

B.     The Assistant Prosecutor's Closing Argument

In closing arguments, the assistant prosecutor used a PowerPoint presentation. One of the slides stated: "The only homophobic or racial slurs used in this courtroom came from the mouths of the defense attorneys." Defense counsel immediately objected. At a sidebar conference, defense counsel contended that the slide was inaccurate and derogatory and should not be used. Counsel also agreed with the court that making further reference to the specific slide would be more harmful than a limiting instruction.

Thereafter, the assistant prosecutor continued his closing without making further reference to the slide or language used by defense counsel. In a follow-

up instruction to the jury, the court cautioned that PowerPoint presentations and arguments of counsel were not evidence.

On appeal, defendant argues that the use of the PowerPoint slide was disparaging to his counsel and deprived him of a fair trial. The State's response is that the defense attempted to paint the cab driver as a homophobic bigot. The State points to arguments made in opening and questions asked on cross-examination, where both defense counsel asked if the cab driver had used homophobic or racial slurs when talking about defendant or Martinez. Accordingly, the State argues that the remark in closing was made in response to defense counsel's questions and arguments and, therefore, was a fair comment.

Prosecutors are afforded reasonable latitude when making openings and closings. State v. R.B., 183 N.J. 308, 330 (2005) (quoting State v. Mayberry, 52 N.J. 413, 437 (1968)); State v. Williams, 113 N.J. 393, 447 (1988). Nevertheless, prosecutors must "confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." State v. Smith, 167 N.J. 158, 178 (2001) (citations omitted). When considering claims of prosecutorial misconduct, we first determine whether misconduct occurred and, if so, whether it deprived the defendant of a fair trial. State v. Wakefield,

190 N.J. 397, 446 (2007) (quoting Smith, 167 N.J. at 181). Accordingly, even when a prosecutor's comments constitute misconduct, reversal of a defendant's conviction is not justified unless the comments were "so egregious that [they] deprived [the] defendant of a fair trial." State v. McGuire, 419 N.J. Super. 88, 139 (App. Div. 2011) (quoting State v. Ramseur, 106 N.J. 123, 322 (1987)).

We discern no reversible error in the assistant prosecutor's closing argument. The comment was contained in a PowerPoint slide and as soon as the assistant prosecutor began to read the slide to the jury, defense counsel objected. Thereafter, there was no further reference to the slide. Just as importantly, during the sidebar discussion, defense counsel agreed with the court that any further reference to the comment would only draw more attention to it. Defense counsel and the court concluded it was better not to further address the slide. Accordingly, in a follow-up instruction to the jury, the judge instructed that the PowerPoint presentation and arguments by counsel were not evidence. Under these circumstances, the comment was not so egregious as to deprive defendant of a fair trial.

C.    The Jury Charge on Flight

Next, defendant contends that the trial court gave an improper charge on the issue of flight. At the charge conference, the State argued that the record

indicated defendant and Martinez ran from the scene, and a flight charge was appropriate. After the court ruled that it would give such a charge, defense counsel suggested language to be added to the model flight charge. Ultimately, the court agreed and gave the charge with the modification suggested by defense counsel.

Defendant now contends that the charge given was unconstitutional because it shifted the burden of proof to defendant to establish that she did not engage in flight as consciousness of guilt. We disagree.

Appropriate jury charges are "essential to a fair trial." State v. Savage, 172 N.J. 374, 387 (2002) (citing State v. Collier, 90 N.J. 117, 122 (1982)). When defendant fails to object to a jury charge, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error in the context of jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

In reviewing a jury charge, "[t]he charge must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005) (citing State v. Jordan, 147 N.J. 409, 422 (1997)). In addition, "[t]he error must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). Furthermore, defense counsel's failure to object to a jury instruction "is considered a waiver to object to the instruction on appeal." State v. Maloney, 216 N.J. 91, 104 (2013) (first citing R. 1:7-2; and then citing Torres, 183 N.J. at 564).

An instruction on flight is appropriate if the underlying circumstances "'reasonably justify an inference that [a defendant's flight] was done with a consciousness of guilt' to avoid apprehension on the charged offense." State v. Randolph, 228 N.J. 566, 594-95 (2017) (quoting State v. Ingram, 196 N.J. 23, 46 (2008)). Read in its entirety, the charge properly instructed the jury that they first had to find that defendant "took refuge in flight for the purpose of evading the accusation or arrest" to consider the flight as proof of consciousness of guilt. Accordingly, we discern no improper shifting of the burden and find no reversible error in the flight instruction.

D.    The Lack of Jury Instruction on Accomplice Liability

Defendant contends that she was deprived of a fair trial because the court did not give an instruction on accomplice liability.  In that regard, the trial court instructed the jury on the lesser-included offenses of theft and simple assault concerning both defendant and Martinez but did not give an accomplice liability instruction on the lesser offenses.

At trial, the State sought an accomplice liability charge, arguing that both defendants acted together and were equally responsible.  Defense counsel objected and contended that there was no agreement or common plan between the defendants.  Ultimately, the trial court did not give an instruction on accomplice liability.

Jury charges are critical in guiding deliberations in criminal trials.  State v. Jenkins, 178 N.J. 347, 361 (2004) (citing Jordan, 147 N.J. at 421-22).  "[I]mproper instructions on material issues are presumed to constitute reversible error," even where a defendant fails to object at trial.  Ibid.  Moreover, "a defendant is entitled to a charge on all lesser included offenses supported by the evidence."  State v. Short, 131 N.J. 47, 53 (1993).  Consequently, the trial court "has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while

acquitting on the greater offense." Jenkins, 178 N.J. at 361. The key consideration is whether the evidence clearly indicates the need for the instruction. See ibid.

The jury was properly instructed on simple assault and theft as lesser-included offenses. At defense counsel's request, no accomplice liability charge was given. We discern no reversible error. See Ingram, 196 N.J. at 40 (finding no reversible error where a jury was instructed on the elements of lesser-included offenses without a specific accomplice liability charge on the lesser-included offenses).

E.    The Sentence

Finally, defendant challenges her sentence, contending (1) she should have been sentenced to drug court; (2) the sentence was excessive when compared to Martinez's sentence to drug court probation; (3) the trial court improperly found and weighed aggravating and mitigating factors; and (4) the court failed to consider defendant's young age.

We review sentencing decisions using an abuse of discretion standard. State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). We will affirm a trial court's sentence unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and

mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The sentencing judge carefully considered defendant's request to be admitted into special drug court probation and found, after analyzing her specific circumstances, that she was ineligible due to the risk of danger she posed to the community. The judge then reviewed the aggravating and mitigating factors argued for by the State and defendant and found that aggravating factors three and nine applied. N.J.S.A. 2C:44-1(a)(3), (a)(9). In that regard, the court found that defendant had committed other offenses and there was a need to deter defendant and others from violating the law. Those findings were supported by credible evidence. The court also found mitigating factor four, that there "were substantial grounds tending to excuse or justify" defendant's conduct, albeit failing to establish a defense. N.J.S.A. 2C:44-1 (b)(4).

The court then sentenced defendant to five years of imprisonment, the minimum sentence for a second-degree crime. In making its evaluations, the court expressly acknowledged that defendant was twenty-two years old when

she was convicted and considered both her age and personal history. Finally, defendant has presented nothing to support her arguments that her sentence was excessive as compared to Martinez, given that Martinez had no prior criminal record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION